IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 7, 2017

**CURTIS KELLER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 10-07532        James M. Lammey, Judge

_____

**No. W2016-00416-CCA-R3-PC**

_____

Petitioner, Curtis Keller, appeals the denial of his petition for post-conviction relief, in which Petitioner alleged that he received the ineffective assistance of counsel. Having reviewed the record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Andrea D. Sipes, Jackson, Tennessee, for the appellant, Curtis Keller.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; Jessica Banti, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Procedural history*

Petitioner was convicted by a jury of two counts of especially aggravated kidnapping, one count of especially aggravated robbery, one count of especially aggravated burglary, three counts of aggravated assault, and one count of employing a firearm during the commission of a dangerous felony. *State v. Curtis Keller*, No. W2012-00825-CCA-R3-CD, 2013 WL 3329032, at *1 (Tenn. Crim. App. June 27, 2013), *perm. app. denied* (Tenn. Dec. 10, 2013). The trial court sentenced Petitioner to a total effective sentence of 240 years' incarceration. *Id.* On direct appeal, Petitioner argued that the jury instructions concerning especially aggravated kidnapping were inadequate,

the jury instructions concerning the employment of a firearm during the commission of a dangerous felony were erroneous, and his eight separate convictions violated his constitutional protection from double jeopardy. A panel of this court concluded that the jury instructions were inadequate, but the error was harmless beyond a reasonable doubt; that the instructions concerning the employment of a firearm were erroneous and that conviction was reversed; and that it was plain error for Petitioner to be convicted of both especially aggravated burglary and attempted especially aggravated robbery based on the same act of causing serious bodily injury to Mr. Morrow. Accordingly, the panel reduced Petitioner's conviction for especially aggravated robbery to aggravated burglary and imposed a new sentence of 15 years for that count. The panel affirmed the remaining judgments of the trial court.

Petitioner timely filed a pro se petition for post-conviction relief, alleging several grounds of ineffective assistance of counsel. Following the appointment of counsel, Petitioner filed an amended petition. Following an evidentiary hearing, the post-conviction court entered a written order denying post-conviction relief. Petitioner appeals the post-conviction court's ruling.

*Facts*

The facts underlying Petitioner's convictions were summarized in this court's opinion on direct appeal as follows:

> During the early morning hours of May 26, 2010, the defendant and at least two accomplices kicked in the door of a house and terrorized its occupants because the defendant – an admitted drug dealer – believed that one of them owed him some money as a result of a prior transaction. After breaking into the premises, the defendant went into a bedroom and woke up his intended target, victim Andrew Morrow, and his target's girlfriend, Tamika Jones. He demanded money. Two of Ms. Jones' children, fifteen-year-old victim M.B. and fourteen-year-old J.G., were present in the home when the intrusion occurred. One of the intruders quickly located victim M.B., who was brought into the adults' bedroom. The intruder proceeded to press his pistol against the boy's head and asked Mr. Morrow: "Do you see what you are fixin' to make me do?" Another of the assailants repeatedly struck Mr. Morrow in the head with a gun, injuring his face and causing a substantial amount of bleeding. Then the intruders began ransacking the residence.

> Fearing for the safety of her other child, Ms. Jones demanded to know the whereabouts of J.G. Surmising from her queries that there was

another individual who was unaccounted for and located somewhere on the premises, the intruders searched the house and finally located J.G. hiding in a bedroom closet – but not before J.G. was able to call the police from a cell phone and report the intrusion. Thinking quickly, J.G. also managed to hide the cell phone – still connected to 911 – underneath a pillow, where it continued to record the ongoing criminal activity for some time after his capture. Meanwhile, Ms. Jones asked one of the intruders if he wanted some of her jewelry, and the intruder responded affirmatively. Mr. Morrow, after struggling with one of the intruders, managed to break out one of the bedroom windows and yell outside for help.

Suddenly, officers of the Collierville Police Department knocked on the door of the residence and announced their presence to those inside. The intruders panicked and sought any means of egress but discovered that the house was surrounded. The defendant took off his mask and attempted to flee on foot. Encountering the police outside, the defendant claimed that he had been the victim of a robbery and that the culprits were still located inside the residence – later clarifying that the "robbery" had occurred sometime earlier, when Mr. Morrow had taken his drugs without paying for them. Apparently unmoved by the defendant's plight, the police arrested him and one of his accomplices, while the other accomplice(s) escaped into the night.

*Keller*, 2013 WL 3329032, at *1-2.

### Post-conviction hearing

Trial counsel testified that she had practiced criminal law "exclusively" for 35 years. She testified that she met with Petitioner three times in jail, but that most of their conversations were at the courthouse. She provided discovery materials to Petitioner. Trial counsel testified that the State offered a plea agreement that included an 18-year sentence, and Petitioner refused to accept the offer.

On the day of trial, Petitioner claimed that he was unaware of his court date, and the trial court read the court minutes, which reflected that Petitioner was present when the trial date was set. Trial counsel testified that Petitioner was "always cordial" to her, and that he never asked her to withdraw as counsel. She testified, "I believe he said he wanted a new attorney on the day of trial. And there was no basis given except in my opinion he was trying to postpone the proceedings."

- 3 -

Trial counsel reviewed the State's discovery response and noted that no drugs or money were found in the victims' house. She testified, "There was absolutely nothing to substantiate 'the victim' being involved in a drug deal." Trial counsel testified that Petitioner insisted that Mr. Morrow had stolen drugs from him and that he later found out that was not true. Trial counsel clarified that "5 grams . . . of marijuana [was] found on the bedroom floor just kind of loose." Trial counsel testified that Mr. Morrow's statement to a detective that he had purchased marijuana from Petitioner in the past was "not at all relevant to what happened [on the] night [of the incident]." She testified that she did not attempt to impeach any of the State's witnesses using their prior statements. She cross-examined Mr. Morrow about the presence of marijuana in the house. Trial counsel testified that she did not cross-examine Mr. Morrow about having purchased drugs from Petitioner because "it certainly wouldn't [have] help[ed] [Petitioner] for it to come out that he had been buying drugs or selling drugs."

Trial counsel testified that Petitioner, against her recommendation, testified at trial. She testified that Petitioner "did several very objectionable things in the courtroom . . ." Petitioner and his co-defendant were tried together. Petitioner never requested that his trial be severed from his co-defendant, and counsel did not believe there were grounds upon which to sever. Trial counsel testified that the State provided "open-file" discovery. She advised Petitioner to accept a plea agreement. Counsel testified that a detective testified at trial that he found Petitioner in the garage of the victims' house, and Petitioner "stood up and raised his hand and said that was me." One of the victims was made to lie down on the bedroom floor and was not allowed to leave. According to trial counsel, "[s]he kept calling out for her children because she was scared for them."

Petitioner asserted at the post-conviction hearing that trial counsel failed to cross-examine one of the victims, Tamika Jones, about a prior inconsistent statement. Trial counsel testified that "there w[ere] no material differences at all" between the witness's statements to police and her testimony at trial.

Petitioner testified that he asked trial counsel to withdraw from representing him on the day before trial. He testified that he did not know that his case was set for trial the following day, and he did not feel prepared for trial. He testified that trial counsel did not communicate with him while he was in jail about his case. He testified that trial counsel "brought [him his] discovery packet. That was it." Petitioner testified that he was "forced to go to trial." Petitioner testified that he requested a continuance, and that the trial court denied his request and "didn't inquire about the conflict that me and my attorney had or none of that."

Petitioner testified that he wrote letters to trial counsel, and trial counsel did not respond to his letters. Petitioner testified that all of the State's witnesses "gave perjured

testimony" at trial. He testified that trial counsel failed to impeach the witnesses on cross-examination with their prior inconsistent statements. He testified that Andrew Morrow told a detective that he had never seen Petitioner before the incident and that "the big guy" held a pistol to his stepson's head, but Mr. Morrow testified at trial that Petitioner did not put a pistol to the child's head. Petitioner also thought that trial counsel should have objected to the prosecutor's statements during voir dire concerning discrepancies in the witnesses' testimony.

*Analysis*

Petitioner contends that counsel provided ineffective assistance. Specifically, Petitioner asserts that counsel failed to properly investigate the case, and that she failed to cross-examine the victims about their prior inconsistent statements. The State responds that the Petitioner failed to establish that counsel was ineffective.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id*. § 40-30-110(f). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at

- 5 -

690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

In his brief on appeal, Petitioner alleges that trial counsel "did not conduct proper investigation of the case as she was apparently unaware that Andrew Morrow and Tamika Jones had given prior inconsistent statements." Petitioner cites in his brief a document that was filed as an exhibit to his post-conviction petition. The document apparently contains a narrative of Detective Riley's interviews in connection with the investigation of the case. Petitioner argues that the inconsistencies in the witnesses' statements "cast a serious doubt as to the veracity and character of both witnesses . . . ." Specifically, Petitioner asserts that trial counsel should have cross-examined Andrew Morrow about his statement to police that he knew Petitioner because he had purchased marijuana from him.

At the post-conviction hearing, trial counsel testified that Mr. Morrow had told a detective that he had bought marijuana from Petitioner in the past, and that she did not think that delving into Petitioner's history of selling drugs would have helped his defense. The State argues that this was a strategic decision by trial counsel, and we agree. Deference is given to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

In its written order denying post-conviction relief, the post-conviction court concluded that counsel was not ineffective for failing to impeach Andrew Morrow "with prior statements that would have suggested that either that the witness knew the Petitioner and/or that he was a drug dealer or user." The post-conviction court also concluded that "even if the information [that Andrew Morton had purchased drugs from Petitioner previously] had been used, it is quite likely that the outcome of the trial would have been the same."

Petitioner also asserts that "[t]he prior inconsistent statement of Tamika Jones calls into question her recitation of events that took place." However, Petitioner does not

explain, nor cite to the record, what prior inconsistent statement he alleges that trial counsel should have used to impeach Tamika Jones at trial. Petitioner has therefore waived review of this claim. *See* Tenn. Ct. Crim. App. R. 10(b). Notwithstanding Petitioner's waiver of the issue, counsel testified at the post-conviction hearing that Ms. Jones' had never provided a sworn statement. A narrative of Detective Riley's interview with Ms. Jones was attached as an exhibit to Petitioner's amended petition. Trial counsel testified that she reviewed a police report and did not find any material differences between the information contained in the report and Ms. Jones' testimony at trial.

Petitioner has failed to establish that counsel's performance was deficient. Thus, we need not reach the issue of whether any alleged deficiencies in counsel's performance prejudiced Petitioner. *See Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) ("If either element of ineffective assistance of counsel has not been established, a court need not address the other element."). We conclude that the post-conviction court properly denied relief.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE